IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **DARRELL GYGI, ET AL.,**<br><br>       Plaintiff,<br><br>vs.<br><br>**ST. GEORGE SURGICAL AND MEDICAL CENTER, L.P., ET AL.,**<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:05CV505DAK |

This matter is before the court on Defendant Marcus L. Peterson, M.D.'s Motion to Stay Litigation and Compel Arbitration, arguing that an arbitration clause in the Physician-Patient Arbitration Agreement entered into between Dr. Peterson and Christine Gygi mandates that this court refer the case to arbitration.  The court held a hearing on the motion on December 12, 2005.  At the hearing, Plaintiff was represented by Christian Austin, and Defendant was represented by David Epperson.  The court took the motion under advisement.  The court has carefully considered the pleadings, memoranda, and other materials submitted by the parties, as well as the facts and law relating to this matter.  Being fully advised, the court renders the following Memorandum Decision and Order.

1

**BACKGROUND**

On October 1, 2004, then 41-year-old Christine Tate Gygi had an abdominal plasty with liposuction of the hips, flanks, and medial thighs at St. George Surgical Center. Her surgeon was Dr. Marcus Peterson. The Complaint alleges that later this same day, Gygi was discharged to a St. George hotel where she received home nursing care and pain medications administered by a pain pump from Community Nursing Services of George. The pump was to administer 20 mg/hr of meperidine continuously with the patient capable of self-administering a 10 mg bonus up to every 12 minutes as needed.

The following day, she was seen by Dr. Peterson in his office. He did not obtain vital signs and noted that the patient "feels real slow and has mostly a pain control issue and that the 'JP drains are watery' and too voluminous to remove at this time." Shortly before 7:00 a.m. the following day, while again at the hotel at which she was staying, Gygi stopped breathing and went into respiratory arrest. She was transported to Dixie Regional Medical Center in full respiratory and cardiac arrest.

Although Gygi was successfully resuscitated in the emergency room and maintained on a ventilator, it was determined that she had sustained severe neurological damage and had "no evidence of viable neurological activity." Her family members decided to withdraw life support, and she was pronounced dead at 1:30 a.m. on October 4, 2004. The Utah State Medical Examiner's autopsy found that the cause of death was Demerol intoxication due to post-operative pain control following abdominoplasty.

On January 14, 2005, Plaintiffs' counsel filed a Request for Prelitigation Review with the Department of Professional Licensing and served a Notice of Intent to Commence Legal Action

for Medical Malpractice on Dr. Peterson. At the prelitigation hearing, Dr. Peterson presented testimony and evidence in defense of Plaintiffs' claims. On June 9, 2005, the Prelitigation Panel issued a Certificate of Compliance and Panel Opinion. Approximately a week later, Plaintiff filed the instant lawsuit.

## DISCUSSION

Dr. Peterson moves the court to stay litigation and compel arbitration based on a Physician-Patient Arbitration Agreement signed by Gygi on September 30, 2004, prior to the abdominoplasty. The arbitration agreement states, in part:

> It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration, and not by a lawsuit or resort to court process.

Under Utah law, courts "interpret contracts in favor of arbitration." *Central Florida Investments, Inc. v. Parkwest*, 40 P.3d 599, 606 (Utah 2002). Dr. Peterson argues that the Agreement covers all claims arising from the medical care he provided Gygi, the Agreement expressly includes wrongful death claims, and the Agreement expressly binds all persons whose claims arise out of such medical care, including spouse, children or heirs of Gygi.

Plaintiffs argue that they are not parties to the Agreement and cannot be bound by it. Plaintiffs further argue that the Agreement is invalid as a matter of law because it does not comply with the requirements for arbitration agreements between a patient and a health care provider set forth in Utah Code Ann. § 78-14-17. Finally, even if the Agreement is valid, Plaintiffs contend that Dr. Peterson waived any rights to arbitration by substantially participating in litigation prior to serving his arbitration demand.

3

In the first instance, the court must decide whether the Agreement was validly executed under Utah law. Utah Code Annotated Section 78-14-17 sets forth several requirements that must be met "for a binding arbitration agreement between a patient and a health care provider to be validly executed." Subsection (a)(ii) requires that Gygi must have been given, in writing, information on "the role of an arbitrator." The Agreement provides no such information nor does it reference any other materials on this topic that were provided to Gygi.

Subsection (a)(v) requires written notification regarding "the automatic renewal of the Agreement each year unless the agreement is canceled in writing before the renewal date." The Agreement does not provide this information. Dr. Peterson contends that this requirement was irrelevant die to the nature of the procedure and Gygi's death. However, whether or not the provision ultimately becomes irrelevant does not speak to whether the Agreement complied with the statutory requirements and was validly executed.

Furthermore, Subsection (a)(vi) requires written notification regarding "the right to have all questions about the arbitration agreement answered." The Agreement does not provide this information. And, Subsection (a)(viii) requires written notification regarding written notification regarding "the right of the patient to require mediation of the dispute prior to the arbitration of the dispute." The Agreement does not provide this notice.

The Agreement also fails to meet the statutory requirements in other respects as well. Utah Code Ann. § 78-14-17(1)(b). Subsection (b)(i)(C) provides that the third arbitrator shall be "jointly selected" by the parties and that the third arbitrator can only be selected by the other two arbitrators if "both parties cannot agree on the selection of the third arbitrator." The Agreement in this case provides that "[e]ach party shall select an arbitrator" and that "a third arbitrator shall

be selected by the arbitrators appointed by the parties." The Agreement also provides that "[e]ach arbitrator shall be a board certified plastic surgeon." Subsection (b)(i), however, does not place this limitation on the arbitrator selected by the parties. Subsection (b)(ii) provides that the arbitration agreement must provide that "if both parties agree, a single arbitrator may be selected." The Agreement, however, fails to contain this provision. Subsection (b)(iii) requires that the arbitration agreement provide that "all parties waive the requirements of Section 78-14-12 to appear before a hearing panel in a malpractice action against a health care provider." The Agreement does not contain such a provision. Subsection (b)(v) requires that an arbitration agreement provide that "the terms of the agreement be for one year and that the agreement be automatically renewed each year unless the agreement is canceled in writing by the patient or health care provider before the renewal date." The Agreement, however, contains no such provision. Under the Subsection (b)(vi), a binding arbitration agreement must provide that "the patient has the right to retain legal counsel." No such provision is contained in the Agreement at issue. Subsection (b)(viii) provides that an arbitration agreement must state that the agreement only applies to "an error or omission that occurred after the agreement was signed." The Agreement does not contain such a provision.

     Defendant acknowledged at the hearing on this motion that the Agreement was entered after these statutory provisions were in effect. He further acknowledged that the Agreement did not contain many of the statutory requirements. He argues, however, the Agreement substantially complies with the statutory requirements. The court does not agree. The language of the statute is mandatory and does not suggest that the provisions are optional. Until such time as a Utah court determines that the statutory language requires only substantial compliance, this

court declines to do so.  This court reads the statute as a legislative directive that has examined and weighed the policy considerations at issue.  The Legislature has stated in very specific terms what is required in an arbitration agreement before it can be considered validly executed.  Given the defects in the present Agreement, it fails to comply with the statutory requirements for a binding arbitration agreement between a patient and a health care provider.

Because the court rules that the Agreement was not validly executed and not binding on Gygi or her heirs, there is no need to determine whether a valid agreement would bind Gygi's heirs even though they were not signatories to the Agreement.  In any event, even if the Agreement was effective and binding against Gygi's heirs, Dr. Peterson waived any contractual right to arbitration by substantially participating in the litigation of this matter prior to making a demand for arbitration.  Under Utah law, there is "a two-part test for determining whether a party has waived its right to arbitrate by participating in litigation of issues subject to arbitration:" (1) the party seeking arbitration has "substantially participated in the underlying litigation to a point inconsistent with the intent to arbitrate;" and (2) the party's participation in the litigation has "resulted in prejudice to the opposing party."  *Baker v. Stevens*, 2005 UT 32.

Dr. Peterson's participation in the pre-litigation process is inconsistent with an intent to arbitrate.  Although it has not dealt with this specific issue, the Utah Supreme Court has held that participation in pretrial proceedings and discovery are actions that "clearly manifest an intent to proceed to trial," instead of arbitration.  *Chandler v. Blue Cross Blue Shield of Utah*, 833 P.2d 356, 360 (Utah 1992). Dr. Peterson's participation in the prelitigation hearing is similarly inconsistent with an intent to arbitrate based on Utah Code Ann. § 78-14-17(b)(iii), which requires arbitration agreements to specifically waive a prelitigation hearing.  Dr. Peterson's

Arbitration Agreement did not comply with the statutory provision and Dr. Peterson fully presented his case before the prelitigation panel. The statutory requirement demonstrates that participation in a prelitigation hearing is inconsistent with the intent to arbitrate.

Furthermore, Dr. Peterson's decision to wait until after the prelitigation hearing and opinion was issued before invoking the Agreement prejudiced Plaintiffs because Dr. Peterson was able to obtain the benefit of a pretrial procedure that is not available in an arbitration. Dr. Peterson was able to obtain a strategic advantage by discerning how an independent panel of experts would view Plaintiffs' claims and his defenses. Plaintiffs would be prejudiced if Dr. Peterson were permitted to have what amounts to two arbitrations by taking advantage of procedures available only in litigation.

Moreover, Dr. Peterson has forced Plaintiffs to undergo the types of expenses the arbitration process is designed to alleviate. Although Plaintiffs may have had to proceed with the pre-litigation hearing with respect to other defendants, they certainly incurred costs related specifically to Dr. Peterson. The statutory requirement to waive a pre-litigation hearing when there will be an arbitration of claims between a patient and a medical care provider is designed to avoid such expenses.

Therefore, the court concludes that the Agreement in this case was not validly executed and is not binding on Gygi's heirs. Even if it were, the court finds that Dr. Peterson waived his right to invoke the Agreement by fully participating in the pre-litigation hearing before moving to compel arbitration.

## CONCLUSION

For the foregoing reasons, Dr. Peterson's Motion to Stay Litigation and Compel Arbitration is DENIED.

DATED this 22nd day of December, 2005.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge